# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

**\* \* \***

IMPACT MARKETING INTERNATIONAL )     Case No.: 2:10-cv-01809-RLH-VCF
LLC, a Nevada limited liability company, )
                             )          **O R D E R**
           Plaintiff,         )
                             )    (Motion for Summary Judgment–#46;
      vs.                )    Motion for Summary Judgment–#48;
                             )         Motion to Strike–#57;
BIG O TIRES, LLC, a Nevada limited liability )         Motion to Strike–#61)
company,                          )
                             )
           Defendant.      )
_____ )

        Before the Court are Plaintiff Impact Marketing International LLC's **Motion for Summary Judgment** (#46, filed Nov. 30, 2011), Defendant Big O Tires, LLC's **Motion for Summary Judgment** (#48, filed Nov. 30), Impact's **Motion to Strike** (#57, filed Jan 6), and Big O's **Motion to Strike** (#61, filed Jan. 13). The Court has also considered the relevant Oppositions and Replies to these motions.

## BACKGROUND

        This is a breach of contract dispute between a marketing company, Impact, and its client, Big O. In 2008, a Big O general manager, Keith Sullivan, in charge of the company-owned stores in the Las Vegas area, signed a contract (the "Contract") with Impact marketing while

AO 72
(Rev. 8/82)

purporting to act on behalf of Big O.  This was a contract to have Impact sell "peeler" discount cards (the "Peeler Cards"), which offered discounts on Big O's products and services in the Las Vegas area.  In May 2009, Sullivan and Impact, through its principle Jason Hearne, signed an addendum (the "Addendum") superseding the Contract.  The Addendum extended the term of the contract and included a liquidated damages provision.

In November, Sullivan ceased employment with Big O and Ed Boyd took over his position over the Las Vegas stores.  When Boyd learned of Sullivan's agreements, he began talking to Hearne about cancelling the Addendum.  Upon learning of this potential outcome, Hearne began negotiations with Tire Works Total Car Care, where Sullivan now worked, and eventually entered into a separate contract providing a similar service to Tire Works (the "Tire Works Contract") selling peeler cards.

After Big O cancelled the contract, it refused to pay the damages Impact sought under the liquidated damages provision.  Impact subsequently filed suit in the Eighth Judicial District Court for the State of Nevada for breach of contract and breach of the covenant of good faith and fair dealing.  Big O subsequently removed the case to this Court under diversity jurisdiction.  Now before the Court are the Parties' cross motions for summary judgment and motions to strike.  For the reasons discussed below, the Court grants each motion for summary judgment in part denies each in part.  The Court also denies Impact's motion to strike and grants in part and denies in part Big O's motion to strike.

## DISCUSSION

### I.   Motions to Strike

Both parties bring separate motions to strike and each is based on different reasons.  Plaintiff seeks to strike certain affidavits by Big O store managers on the basis that the witnesses were disclosed late and that the declarations are based on hearsay.  Big O also seeks to strike various of Impact's exhibits as hearsay, but also on the ground that they were either not at all or

/

AO 72
(Rev. 8/82)

1   insufficiently authenticated for use in a summary judgment motion.  Big O also seeks to strike

2   Hearne's affidavit and accompanying financial statements as a sham affidavit.

3        **A.**    **Impact's Motion to Strike**

4                 Impact seeks to have the declarations of Jeff Lynch, Thomas Myers, and Jerry

5   Tidwell, managers of different Big O stores in the Las Vegas area, stricken on the grounds that

6   they contain inadmissible hearsay and that the declarants were disclosed late.  The Court refuses to

7   strike these documents on two grounds.  First, the lateness was not prejudicial.  Second, while the

8   affidavits do contain some hearsay, they are not predominately hearsay.  The Court will thus

9   consider those portions of the declarations which are admissible and need not strike the exhibits.

10        **B.**    **Big O's Motion to Strike**

11            **i.**    **Authentication**

12                 "A trial court can only consider admissible evidence in ruling on a motion for

13   summary judgment." *Orr v. Bank of America.*, 285 F.3d 764, 773 (9th Cir. 2002) (citing Rule

14   56(e) and *Beyene v. Colemant Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).  To be

15   admissible, evidence must be properly authenticated.  *Id.* (citing Fed. R. Evid. 901(a)).  Therefore,

16   "unauthenticated documents cannot be considered in a motion for summary judgment."  *Id.* at 773.

17   A person with personal knowledge and who could admit the evidence at trial may authenticate

18   evidence for a summary judgment motion by attaching the evidence to a properly executed

19   affidavit attesting to the evidence's authenticity.  *Id.* at 773-74.

20                 Here, Impact entirely failed to authenticate any of the evidence it relied on in its

21   motion for summary judgment or in its response to Big O's motion for summary judgment.  First,

22   Impact's counsel failed to attach affidavits (his own or others) attesting to the authenticity of any

23   of the exhibits.  Further, the depositions Impact submitted did not include the court reporter's

24   certificates to independently authenticate them.  Further, multiple of the depositions Impact

25   attached and cited contained a specific disclaimer from the court reporter stating that they were

26   "uncertified rough draft transcript[s] unedited and uncertified" and that they "cannot be used or

1  cited in any court proceedings . . . ." (*See, e.g.*, Dkt. #47, Plaintiff's Statement of Facts in Support

2  of Motion for Summary Judgment Ex. 2, James Bull Deposition (Rough Draft).)

3        In responding to Big O's motion to strike, Impact filed three affidavits by Impact's

4  counsel Chad Hester (Dkt. ##65-67), which finally fixed most of the authentication problems,

5  principally the problems with the deposition transcripts not having been authenticated.  However,

6  Big O continues to argue that certain of the evidence is inadmissible hearsay or that the documents

7  are not of the type a party's attorney can authenticate.  *See, e.g.*, *Hess v. Multnomah Cnty.*, 211

8  F.R.D. 403, 406 (D. Or. 2001).  The Court agrees with some, but not all, of Big O's argument.

9  Exhibit 7 to Impact's motion of summary judgment contains copies of multiple cancelled checks.

10  The Court finds that as commercial paper these checks are sufficiently self-authenticating that it

11  may review them. Fed. R. Evid. 902(9).  As to the exhibits attached to Impact's response to Big

12  O's motion, the Court only strikes exhibits 10 and 11 (Dkt. #55, Plaintiff's Statement of Facts in

13  Support of Opposition to Defendant's Motion for Summary Judgment) as they are either not

14  sufficiently authenticated or are hearsay.[1]  The Court does not strike exhibits 5, 9, 14, 15, or 16.

15  (*Id.*)  These exhibits all fit into a hearsay exception (Exs. 5, 14, 16; Fed. R. Evid. 803, 807) or are

16  exempted from hearsay as statements of a party opponents' representatives (Exs. 9, 15; Fed. R.

17  Evid. 801(d)(2)).[2]  Nonetheless, the Court advises Impact's counsel to be more prepared and better

18  about authentication in future filings with this Court.

19        **ii.**    **Sham Affidavit**

20        The Court now turns to the question of whether the Hearne affidavit (Dkt. #55, Ex.

21  17) submitted to purportedly clarify Hearne's deposition testimony is a sham affidavit that the

22

---

23      [1] Ex. 10 - letter from Jason Hearne to Edward Boyd dated Nov. 12, 2009; Ex. 11 - Impact profit and

24  loss statement.

25      [2] Ex. 5 - Keith Sullivan's Big O business card; Ex. 9 - email chain between Bruce Warchol and Jason
Hearne from Dec. 27, 2007 to Jan. 2, 2008; Ex. 14 - merchant agreement between Impact and Big O; Ex. 15 -

26  email from Jim Bull to Jason Hearne dated Sept. 16, 2009; Ex. 16 - marketing agreement between Impact and
Morpheus Investments, Inc., dated Nov. 18, 2009.

AO 72
(Rev. 8/82)

1    Court may not consider in ruling on the motions for summary judgment. A party cannot, as a

2    matter of law, create an issue of material fact to defeat summary judgment by a declaration or

3    affidavit contradicting its previous deposition testimony; that is, a party cannot create an issue of

4    fact through a "sham affidavit."  *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806-07

5    (1999) ("The lower courts, in somewhat comparable circumstances, have found a similar need for

6    explanation. They have held with virtual unanimity that a party cannot create a genuine issue of

7    fact sufficient to survive summary judgment simply by contradicting his or her own previous

8    sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn

9    deposition) without explaining the contradiction or attempting to resolve the disparity."); *see also*

10   *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998-99 (9th Cir. 2009) (explaining the limitations

11   on the Ninth Circuit's sham affidavit rule.)

12          Here, Impact does attempt to explain the discrepancy between Hearne's deposition

13   testimony that Impact profited[3] from the Tire Works Contract and the subsequent affidavit

14   claiming that Impact has lost a substantial amount of money on the Tire Works Contract.  While

15   this explanation appears insufficient, it is ultimately immaterial to the disposition of this motion as

16   will be shown below in the Court's discussion on mitigation.  Thus, the Court declines to strike the

17   affidavit because the Court need not refer to the affidavit based on other rulings set forth below.

18   **II.     Motions for Summary Judgment**

19          **A.     Standard**

20          The purpose of summary judgment is to avoid unnecessary trials when there is no

21   dispute as to the facts before the court.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d

22   1468, 1471 (9th Cir.1994).  Summary judgment is appropriate when the pleadings, the discovery

23   and disclosure materials on file, and any affidavits "show there is no genuine issue as to any

24

25          _____

26          [3] Hearne did not estimate Impact's exact profits in his deposition but rather explained that Impact's profits could be ascertained by multiplying the number of peeler cards sold by roughly $7.00.  (Dkt. #61, Ex. 1 Hearne Depo Vol. 1, 131:7-13, 132:23-133:11.)

AO 72
(Rev. 8/82)

material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Service Co*., 391 U.S. 253, 288–89 (1968)). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.*, 693 F.2d 870, 883 (9th Cir. 1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr*, 285 F.3d 764, 783 (9th /

AO 72
(Rev. 8/82)

1    Cir. 2002) (internal citations omitted).  "The mere existence of a scintilla of evidence in support of

2    the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.

3            Where parties submit cross-motions for summary judgment, as here, the court must

4    consider each party's evidence, regardless under which motion the evidence is offered.  *Fair Hous.*

5    *Council v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001); *see also* William W. Schwarzer, et

6    al., *The Analysis and Decision of Summary Judgment Motions*, 139 F.R.D. 441, 499 (Feb. 1992);

7    10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §

8    2720, at 335-36 (3d ed.1998) ("The court must rule on each party's motion on an individual and

9    separate basis, determining, for each side, whether a judgment may be entered in accordance with

10   the Rule 56 standard.").

11       **B.    Analysis**

12           Both parties seek summary judgment on both of Impact's claims.  Thus, the Court

13   will address the motions concurrently.

14       **1.    Breach of Contract**

15           To prevail on a breach of contract claim, a plaintiff must show: "(1) that there was a

16   valid contract, (2) that the plaintiff performed as specified by the contract, (3) that the defendant

17   failed to perform as specified by the contract, and (4) that the plaintiff suffered an economic loss as

18   a result of the defendant's breach of contract." *Samuel, Son & Co. Inc. v. Sierra Stainless, Inc.*,

19   No. 3:09-cv-00291, 2010 WL 4237993 (D. Nev. Oct. 19, 2010).  Big O disputes three of the

20   elements for breach of contract.  Big O argues that the Addendum was invalid because Sullivan

21   lacked apparent or actual authority to enter contracts for Big O, that Impact breached the

22   Addendum (thus excusing Big O's breach), and that Impact did not suffer economic loss from any

23   breach as it mitigated any awardable damages with the Tire Works Contract. Big O also argues

24   that Impact's damages, if any, must be limited to the one year notice period in the Addendum and

25   that the liquidated damages provision is an unenforceable penalty.  The Court will address each of

26   these arguments in turn.

AO 72
(Rev. 8/82)

1            **i.**        **Contract Validity**

2               **a.**        **Authority to Contract**

3         Impact and Big O dispute whether or not Sullivan had apparent or actual authority

4 to enter into the Addendum.  For the Addendum to be valid and binding on Big O, Sullivan would

5 have needed apparent or actual authority to bind Big O as its representative.  *Dixon v. Thatcher*,

6 742 P.2d 1029, 1031 (Nev. 1987) ("To bind a principal, an agent must have actual authority,

7 express or implied, or apparent authority.")  The Court finds that questions of material fact remain

8 as to whether Sullivan had either actual, or at least, apparent authority to contract on Big O's

9 behalf in some fashion based on the representations of the parties and witnesses in different

10 depositions.[4]  Thus, the Court declines to grant summary judgment on this element.

11               **b.**        **Liquidated damages**

12         Big O also argues that the liquidated damages provision of the Contract Addendum

13 is an unenforceable penalty.  Under Nevada law, liquidated damages are a good faith estimate of

14 the damages likely to occur upon breach and which the parties agree to in their contract.  *Mason v.*

15 *Fakhimi*, 865 P.2d 333, 335 (Nev. 1993).  Liquidated damages "provisions are generally prima

16 facie valid, and the party challenging the provision must establish that the provision amounts to a

17 penalty" to invalidate it.  *Id.*  Nevada has defined an unenforceable penalty as follows:

18         As distinguished from liquidated damages, the term "penalty," as used in
contract law, is a sum inserted in a contract, not as the measure of

19         compensation for its breach, but rather as a punishment for default, or by way
of security for actual damages which may be sustained by reason of

20         non-performance, and it involves the idea of punishment.... [The] distinction
between a penalty and liquidated damages is that a penalty is for the purpose

21         of securing performance, while liquidated damages is the sum to be paid in
the event of non-performance.

22

23

24

25       [4] Big O's repeated reliance on Sullivan's acknowledgment that he did not have authority to contract for

26 Big O nationally is unavailing.  An individual may have actual (or apparent) authority that is in someway limited
in scope.

AO 72
(Rev. 8/82)

1    *Id.* (quoting 22 Am.Jur.2d *Damages* § 684 (1980)) (alteration in original).  "In order to prove that

2    such a provision constitutes a penalty, the challenging party must persuade the court that the

3    liquidated damages are disproportionate to the actual damages sustained by the injured party."  *Id.*

4            Big O contends that Hearne's testimony in his deposition and Impact's answers to

5    requests for admissions prove that Impact intended the liquidated damages provision as a penalty

6    and, therefore, it should be unenforceable.  The Court disagrees.  It is true that in his deposition,

7    Hearne repeatedly used the term 'penalty' or some variation thereof and said that it was to secure

8    Big O's performance of the contract.  (*See* Dkt. #49, Ex. 4, Hearne Depo Vol. 1, 18, 98, 249; Ex.

9    5, Hearne Depo Vol. 2, 333.)  It is also true that in its answers to requests for admission Impact

10   admitted to similar things.  (*Id.* Ex. 6, Answers to Requests ##11, 12.)  However, the Court is not

11   willing to assume a legal conclusion by a witness using arguably legal jargon such as 'penalty' and

12   'security.'  *See U.S. v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2011) ("The lay witnesses may

13   not, however, testify as to a legal conclusion, such as the correct interpretation of a contract.")

14   Thus, the Court is not willing to interpret Hearne or Impact's language as harshly as Big O desires,

15   though a jury may.

16           Further, while there is not a lot of evidence that Hearne went to any great effort to

17   estimate what Impact's reasonable damages would be, there is some, which is sufficient to avoid

18   summary judgment.  Hearne testified that he sought a profit and loss statement from his accountant

19   which showed Impact making $100,000-200,000 a year in profits from the Contract before

20   creating the Addendum.  (Dkt. #55, Ex. 8, Hearne Depo Vol. 3, 33.)  The liquidated damages

21   provision also decreases the amount of damages over time, which shows some effort to relate the

22   amount of liquidated damages to the actual damages Impact was likely to suffer.  (Dkt. 49, Ex. 3,

23   Addendum ¶ 10.)  Also, in arguing that Impact fully mitigated its damages with the Tire Works

24   Contract, Big O apparently concedes (for its own argument to work) that Impact made

25   approximately $11,000.00 per month from the Addendum.  (Dkt. #48, Mot. 18:17-24-19:1-12.)

26   This would equate to more than the $100,000.00 per year called for under the liquidated damages

AO 72
(Rev. 8/82)

1    provision.  Thus, the Court cannot conclude as a matter of law that this liquidated damages

2    provision is an unenforceable penalty.  Accordingly, the Court denies summary judgment on this

3    issue.

4                              ii.       **Plaintiff's Performance**

5                  Big O further argues that Impact breached the Addendum by selling the peeler cards

6    for less than the parties agreed.  This is incorrect.  Big O bases this argument on the price printed

7    on the peeler card "mock up" attached to the contract.  (Dkt. #48, Ex. 3 at Ex. A.)  However, the

8    contract clearly states that the "mock up" of the peeler card is attached to the Addendum to

9    demonstrate that it would contain a particular list of terms that are listed in the Addendum.  (*Id.* at

10   ¶ 8.)  Each of these terms is one of the peel-off portions of the card, in other words, the coupons

11   attached to the card to be peeled off (thus giving the peeler card its name).  (*Id.*)  Nowhere in the

12   Addendum does it specify the required selling price of the card and the Court is not willing to hold

13   that selling an item at less than what appears to be nothing more than a suggested price is a

14   material breach of contract.  Thus, the Court grants summary judgment to the extent that it finds

15   Impact did not breach the Addendum by selling the cards for less than $29.95.

16                             iii.       **Damages**

17                              a.       **Mitigation**

18                  Big O argues that Impact did not suffer any damages because it mitigated its

19   damages with the Tire Works Contract it signed upon learning that it would likely lose the Big O

20   Addendum.  While this argument would be a critical issue if there were no liquidated damages

21   provision, the Court has found that the validity of the liquidated damages provision depends on

22   questions of fact a jury must resolve.  While Nevada courts have not directly addressed this issue,

23   "[s]ince the effect of a stipulated damages provision is to substitute a predetermined amount for

24   actual damages . . . the existence of an enforceable liquidated damages provision has the effect of

25   making the mitigation of damages irrelevant."  24 S. Williston on Contracts § 65.31 (4th ed.

26   2002).  In essence, the courts need not consider any effort to mitigate damages (failed, successful,

AO 72
(Rev. 8/82)

1    or unattempted) where a valid liquidated damages provision exists.  22 Am.Jur.2d § 538 (2007);

2    *see also Vrgora v. Los Angeles Unified School Dist.*, 200 Cal Rptr. 130, 136 (Cal. Ct. App. 1984)

3    ("it follows that in agreeing to the liquidated damages provision in the subject contract, appellant

4    "bargained away" any offsetting claim he may have had for LAUSD's unjust enrichment at his

5    expense.")  Thus, the Court will not consider any mitigation under the Tire Works Contract and

6    denies summary judgment on this issue.

7                                       **b.      Time Limitation**

8                 Big O also argues that any damages from breach of the Addendum must be limited

9    to twelve months after Big O cancelled the Addendum.  Big O bases this argument on the

10   liquidated damages provision's clause stating: "This agreement may be terminated without cause

11   by either Party upon written notice by the terminating party to the non-terminating Party at least

12   one (1) year prior to the proposed termination."  (Dkt. 49, Ex. 3, Addendum ¶ 10.)  Big O,

13   however, fails to acknowledge that this sentence is part of the paragraph granting liquidated

14   damages to Impact if Big O terminates the Addendum.  The paragraph read as a whole, rather than

15   the sentence read in isolation, states that either party may terminate the contract with one year's

16   notice, but, if Big O terminates the Addendum, then liquidated damages will be determined based

17   on the total number of years left on the Addendum.  The (non-binding) rationale of the cases Big O

18   cites is, therefore, inapplicable here.  In those cases, the courts determined that the party seeking

19   damages had no reasonable expectation to profit from the relevant contract beyond the notice

20   period.  *See, e.g.*, *Sofa Gallery, Inc. v. Stratford Co.*, 872 F.2d 259, 263 (8th Cir. 1989).  Here, the

21   Addendum language is substantively different and does provide a reasonable expectation of

22   continued profit despite a termination notice period.  Thus, the Court refuses to construe this

23   language as limiting the liquidated damages clause to one year of damages as it would entirely

24   rewrite the plain language of the Addendum.

25   /

26   /

### 2.    Breach of the Covenant of Good Faith and Fair Dealing

Under Nevada law, "[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and execution." *A.C. Shaw Constr. v. Washoe County*, 784 P.2d 9, 9 (Nev. 1989) (quoting Restatement (Second) of Contracts § 205).  Damages may be awarded against a defendant that performs a contract in a manner that is unfaithful to the contract's purpose or where a defendant deliberately contravenes the intention and spirit of the contract, thus denying plaintiff's justified expectations. *Morris v. Bank of Am. Nevada*, 886 P.2d 454, 457 (Nev. 1994); *Hilton Hotels v. Butch Lewis Prods.*, 808 P.2d 919, 923 (Nev. 1991).  "Whether the controlling party's actions fall outside the reasonable expectations of the dependent party is determined by the various factors and special circumstances that shape these expectations." *Hilton Hotels*, 808 P.2d at 923–24.

A breach of the covenant of good faith and fair dealing occurs "[w]here the terms of a contract are literally complied with but one party to the contract deliberately contravenes the intention and spirit of the contract . . . ." *Hilton Hotels*, 808 P.2d at 922–23.  Here, Big O either breached the Addendum or did not breach it if the Addendum was invalid because Sullivan did not have apparent or actual authority to contract on Big O's behalf.  Thus, the Addendum could not have been literally complied with but deliberately contravened.  In essence, Impact's claim for breach of the covenant of good faith and fair dealing is just its breach of contract claim reiterated. As such, the Court grants summary judgment in Big O's favor and dismisses this claim.

/

/

/

/

/

/

/

AO 72
(Rev. 8/82)

1                                   **CONCLUSION**

2            Accordingly, and for good cause appearing,

3            IT IS HEREBY ORDERED that Impact's Motion to Strike (#57) is DENIED.

4            IT IS FURTHER ORDERED that Big O's Motion to Strike (#61) is GRANTED in

5 part and DENIED in part as stated above.

6            IT IS FURTHER ORDERED that Impact's Motion for Summary Judgment (#46) is

7 GRANTED in part and DENIED in part as follows:

8                   •      The Court finds that the sales price of the peeler cards was not a

9                       term of the contract, much less a material term of the contract.

10                   •      The motion is denied in all other respects.

11            IT IS FURTHER ORDERED that Big O's Motion for Summary Judgment (#48) is

12 GRANTED in part and DENIED in part as follows:

13                   •      The motion is granted as to the claim for breach of the covenant of

14                       good faith and fair dealing.

15                   •      The motion is denied in all other aspects.

16            Dated: February 2, 2012.

17

18                                             _____

19                                 **ROGER L. HUNT**
                                            **United States District Judge**

20

21

22

23

24

25

26