UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| IMPACT MARKETING INTERNATIONAL, LLC, a Nevada limited liability company,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>BIG O TIRES, LLC, a Nevada limited liability company,<br><br>　　　　　　　　　　Defendant. | Case No. 2:10:cv-01809-MMD-VCF<br><br>ORDER<br><br>(Motions in Limine—Dkt. no. 76) |

Before the Court are Defendant's **Motions in Limine**. (Dkt. no. 76). Defendant moves (1) to deem Plaintiff's admissions conclusively established; (2) to exclude Exhibit A to Jason Hearne's Affidavit; (3) to preclude Jason Hearne from offering opinion testimony regarding Plaintiff's alleged damages; and (4) to preclude Plaintiff from seeking actual damages beyond one year of lost profits from the date of termination of the disputed contract.

For the reasons set forth below, the Court grants the motions in part and denies them in part.

**I.   BACKGROUND**

This is a breach of contract dispute between a marketing company, Impact Marketing International, LLC ("Impact" or "Plaintiff"), and its client, Big O Tires LLC ("Big O" or "Defendant"). In 2008, a Big O general manager, Keith Sullivan, in charge of the

company-owned stores in the Las Vegas area, signed a contract (the "Contract") with Impact while purporting to act on behalf of Big O. The contract was to have Impact sell "peeler" discount cards, which offered discounts on Big O's products and services in the Las Vegas area. In May 2009, Sullivan and Impact, through its principal, Jason Hearne, signed an addendum (the "Addendum") superseding the Contract. The Addendum extended the term of the contract and included an alleged liquidated damages provision, which the parties refer to as the Buyout Schedule or Buyout Provision.

In November 2009, Sullivan left Big O and began working at Tire Works Total Car Care ("Tire Works"). Ed Boyd took over Sullivan's position in the Big O Las Vegas stores. Soon after Boyd took over, in November 2009, Big O cancelled the Addendum. Impact subsequently filed suit in the Eighth Judicial District for the State of Nevada claiming breach of contract and breach of the covenant of good faith and fair dealing. Defendant removed the case to this Court under its diversity jurisdiction, and counterclaimed for trademark infringement, trademark dilution, unfair competition, and deceptive trade practices. (Dkt. no. 41). On February 2, 2012, the Court granted summary judgment on Plaintiff's claim that Defendant breached the covenant of good faith and fair dealing. Plaintiff's breach of contract claims and Defendant's counterclaims remain.

## II. DISCUSSION

### A. Legal Standard

A motion in limine is a procedural device to obtain an early and preliminary ruling on the admissibility of evidence. Black's Law Dictionary defines it as "[a] pretrial request that certain inadmissible evidence not be referred to or offered at trial. Typically, a party makes this motion when it believes that mere mention of the evidence during trial would be highly prejudicial and could not be remedied by an instruction to disregard." Black's Law Dictionary 1109 (9th ed. 2009). Although the Federal Rules of Evidence ("FRE") do not explicitly authorize a motion in limine, the Supreme Court has held that trial judges

are authorized to rule on motions in limine pursuant to their authority to manage trials. *Luce v. United States*, 469 U.S. 38, 41 n. 4 (1984).

A motion in limine is a request for the court's guidance concerning an evidentiary question. *See Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999). Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). However, a motion in limine should not be used to resolve factual disputes or weigh evidence. *See C & E Servs., Inc., v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *See, e.g., Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT & T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). This is because although rulings on motions in limine may save "time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

In limine rulings are provisional. Such "rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n. 3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

**B.    Motion to Deem Plaintiff's Rule 36 Admissions Conclusive**

Here, like in its motion for summary judgment (dkt. no. 48 at 19-21), Defendant requests that the Court find that Plaintiff's Admissions relating to the Buyout Schedule

3

conclusively established, thereby precluding Plaintiff from offering any contradictory or inconsistent evidence on the issue of liquidated damages.

A liquidated damages provision is "generally prima facie valid" under Nevada law, and "the party challenging the provision must establish that the provision amounts to a penalty" to invalidate it. *Mason v. Fakhimi*, 865 P.2d 333, 335 (Nev. 1993). The "distinction between a penalty and liquidated damages is that a penalty is for the purpose of securing performance, while liquidated damages is the sum to be paid in the event of nonperformance." *Id.*

Defendant notes that in response to its Rule 36 Request for Admission, Plaintiff admitted that the Buyout Schedule was "included for the purpose of securing performance" of the Addendum (dkt. no. 77, Ex. 1, Request No. 11) and that it was "included as a security for actual damages which may be sustained by [Impact] in the case of non-performance or breach by Big O." (*Id.,* Request No. 12). However, Defendant raised this same argument in the summary judgment proceedings. As stated in the Court's previous Order, "the Court is not willing to interpret . . . Impact's language as harshly as Big O desires, though a jury may." The motion is denied.

### C. Motion to Exclude Exhibit A to the Hearne Affidavit

Defendant argues that Exhibit A to the Hearne Affidavit ("Exhibit A") (Dkt. no. 77, Ex. 2) is inadmissible hearsay and does not fall under any of the exemptions or exceptions to the rule against hearsay. Exhibit A contains a series of financial statements showing Impact's revenue and expenses attributable to peeler card sales for its Tire Works account. This document was made by Hearne after a request by Defendant's attorney at Hearne's Oct. 20, 2011 deposition. The attorney requested that Hearne provide Defendant with a definitive statement of Impact's profit per peeler card for its Tire Works account. (*See* Dkt. no. 82-1 at 8).

Exhibit A contains information offered for the truth of the matter it asserts and does not fall under any of the hearsay exemptions or exceptions. It does not constitute a business record under FRE 803(6) because it was prepared specifically for the purposes

1  of litigation. Nor does it fall under FRE 807, the residual exception to the rule against
2  hearsay.

3  FRE 803(6) provides that records of a regularly conducted activity are excepted
4  from the rule against hearsay if:

> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Most problematic for Plaintiff is the 803(6)(E) requirement. All parties agree that Exhibit A was prepared specifically for the purposes of litigation.[1] "[A] document prepared for purposes of litigation is not a business record because it is lacking in trustworthiness. This is because where the only function that the report serves is to assist in litigation or its preparation, many of the normal checks upon the accuracy of business records are not operative." *Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1259 (9th Cir. 1984) (internal quotation marks and citations omitted); *see also Sana v. Hawaiian Cruises, Ltd.*, 181 F.3d 1041, 1046 (9th Cir. 1999) ("Courts are rightfully wary when parties create self-serving documents and seek to offer them as business records."). Exhibit A is inherently untrustworthy because it was produced by Hearne during this litigation to provide evidence regarding his company's damages. For the

---

[1] Plaintiff admits that the Exhibit was created for litigation, but argues that the document cannot be excluded because Hearne prepared the document in response to a request by Defendant's attorney. While that may be the case, it does not alter the fact that Hearne prepared the financial statements in the midst of litigation specifically to support his claim of damages. Had Hearne produced a financial statement prepared *before* litigation in response to Defendant's attorney request for documentation, such a document might satisfy the 803(6) requirements. The underlying financial records which Hearn relied upon in preparing Exhibit A may also satisfy Rule 803(6). But because there is no dispute that Exhibit A to the Hearne Affidavit was created by Hearne for the purposes of proving damages, the exhibit fails to satisfy 803(6)(E).

same reason, Exhibit A does not fall under the residual exception to the hearsay rule, FRE 807.[2]  The motion is granted.

### D. Motion to Preclude Plaintiff from Offering Opinion Testimony Regarding Impact's Alleged Actual Damages or Lost Profits

Defendant requests that Hearne be precluded from offering opinion testimony regarding Impact's alleged actual damages or lost profits.

A lay witness may testify in the form of an opinion so long as the opinion is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact at issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

The advisory committee note to FRE 701 states that business owners may present lay testimony regarding their company's profits, value, and damages. FRE 701, adv. committee note (2000) (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) ("no abuse of discretion in permitting the plaintiff's owner to give lay opinion testimony as to damages, as it was based on his knowledge and participation in the day-to-day affairs of the business")). The note explains that such testimony is not expert testimony because it "is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business." *Id.*

Defendant argues that although Hearne is a Managing Member of Impact, any estimate of lost profits made by Hearne would be purely speculative because Impact is a new business and the Big O account was its first business transaction. "[D]amages based on future lost profits may not be remote, speculative, or conjectural and must be provided with a reasonable degree of certainty and exactness," though "absolute

---

[2] Exhibit A does not have "circumstantial guarantees of trustworthiness" equivalent to the other hearsay exemptions and exceptions because it was prepared specifically for litigation. *See* Fed. R. Evid. 807.

6

1  exactitude of future losses is not required." *U.S. Salt, Inc. v. Broken Arrow*, 563 F.3d
2  687, 690 (8th Cir. 2009) (quoting *Marvin Lumber & Cedar Co. v. PPG Indus.*, 401 F.3d
3  901, 914 (8th Cir. 2005) (internal quotation marks and brackets omitted)). The record
4  does not demonstrate that Hearne's knowledge of Impact's lost profits is purely
5  speculative. He is a Managing Member of Impact and oversaw both the Big O and Tire
6  Works accounts. (Dkt. no. 82-1 at 17-18). As such, his testimony is not "clearly
7  inadmissible on all potential grounds." *See Hawthorne Partners*, 831 F. Supp. at 1400-
8  01. The motion is denied.

### E. Motion to Preclude Plaintiff from Seeking or Providing Evidence Regarding Actual Damages beyond One Year of Lost Profits from Date of Termination

11  Defendant requests that the Court limit the amount of actual damages Impact can
12  recover to 12 months. Defendant notes that in each of Plaintiff's Rule 26(a) disclosures,
13  Plaintiff requested damages amounting to $100,000 per year for a total of five years (the
14  Buyout Schedule, which is capped at $500,000) or, in the alternative, 12 months of lost
15  profits. (Dkt. no. 77, Ex. 4 at 29; Ex. 5 at 35; Ex. 6 at 42; Ex. 7 at 48; Ex. 8 at 55).

16  Defendant asks that the Court limit Plaintiff's request for actual damages to the
17  amount stated in its Rule 26 disclosures so as to avoid prejudice and ensure that
18  Defendant must only defend against damages Plaintiff seeks in its filings. Fed. R. Civ.
19  P. 26(a)(1)(iii) requires that parties disclose all damages claimed to the opposing party.
20  Further, "deposition-discovery rules are to be accorded a broad and liberal treatment . . .
21  [m]utual knowledge of all the relevant facts gathered by both parties is essential to
22  proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). However, a party need
23  not include information in a 26(a) disclosure if the information has "otherwise been made
24  known." Fed. R. Civ. P. 26(e)(1)(A).

25  While it is true that Plaintiff limited its request for actual damages to 12 months in
26  its 26(a) disclosures, it did not put any cap on its request for actual damages in its First
27  Amended Complaint ("FAC"). (Dkt. no. 39 at ¶ 20). In paragraph 17 of the FAC, Plaintiff

requests $500,000 pursuant to the Buyout Schedule. (*Id.* at ¶ 17). And in paragraph 20, Plaintiff alleges that:

> [a]s a result of Big O's repudiation and termination of the Addendum, Impact Marketing *lost the revenue and profits* that it would have generated from the continued sale of the [Big O] Peeler Card, *which amount exceeds $100,000 per year.*" (emphasis added).

Although this allegation differs from Plaintiff's request for damages in its 26(a) disclosures, Plaintiff should not be limited to seeking damages requested in its disclosures because the FAC put Defendant on notice that Impact might argue its actual damages exceeded one year. *See* Fed. R. Civ. P. 26(e)(1)(A). Plaintiff calls the losses it allegedly incurred "lost revenue and profits," and does not state that its request for such damages is capped at one year. (Dkt. no. 39 at ¶ 20). In fact, paragraph 20 references Impact's actual damages as $100,000 "per year." (*Id.*) This should have sufficed for Defendant to infer that Impact may request actual damages for *more than* a single year.

Further, in Plaintiff's Opposition to Defendant's Motion for Summary Judgment Plaintiff alleges that it incurred $174,355.66 in lost profits "per year," which should also have put Defendant on notice that Plaintiff is seeking over one year of actual damages. (Dkt. no. 54 at 26).

Combined, paragraphs 20 of the FAC and Plaintiff's Opposition brief put Defendant on notice that Plaintiff is alleging *both* five years of liquidated damages at $100,000 per year *and* actual damages of at least $100,000 per year–not clearly capped at a single year. Allowing Plaintiff to request greater than one year in lost profits would not result in prejudice to Defendant. The motion is denied.

///
///
///
///
///
///

**CONCLUSION**

Accordingly,

IT IS HEREBY ORDERED that Defendant's motions in limine are GRANTED in part and DENIED in part as follows:

- The Court finds that Exhibit A to Jason Hearne's declaration is inadmissible hearsay
- The motions are denied in all other respects.

ENTERED THIS 11th day of June 2012.

_____
UNITED STATES DISTRICT JUDGE